# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
Civil Action No.: 3:23-cv-00245-MOC-DCK

| | |
|---|---|
| SOMERO ENTERPRISES, INC.,<br><br>Plaintiff<br><br>v.<br><br>TOPP & SCREED S.A. and INDUSTRIAL FLOOR CONSULTING, INC.,<br><br>Defendants. | MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................... ii

I.      INTRODUCTION ...............................................................................................................1

II.     PROCEDURAL BACKGROUND.....................................................................................1

III.    BACKGROUND OF *INTER PARTES* REVIEW PROCEEDINGS ..................................2

IV.    LEGAL STANDARD........................................................................................................3

V.     ARGUMENT.....................................................................................................................4

        A.     Factor 1: While This Case Is In The Relatively Early Stages of Litigation, The Court Should Still Deny Defendants' Motion (Neutral)..................................4

        B.     Factor 2: A Stay Would Unduly Prejudice Plaintiff (Favors Plaintiff) ..................6

        C.     Factor 3: Defendants Have Not Shown That A Stay Will Simplify The Issues In Question Because It Is Highly Speculative Whether The PTAB Will Even Institute An IPR (Favors Plaintiff) ..........................................................9

VI.    CONCLUSION................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Borgwarner, Inc. v. Honeywell Int'l, Inc.*,
  No. CIV. 1:07-cv-184, 2008 WL 2704818 (W.D.N.C. July 7, 2008) ........................................3

*Brixham Sol'ns. Ltd. v. Juniper Networks, Inc.*,
  No. 13-CV-00616-JCS, 2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) ...........................11, 12

*Cont'l Auto. Sys. Inc. v. Hamaton Auto. Tech. Co. Ltd. et al.*,
  No. 2:16-cv-00226 (E.D. Va. Feb. 7, 2017) ..........................................................................7, 9

*DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*,
  No. 15-CV-01362-BLF, 2015 WL 12859346 (N.D. Cal. Oct. 13, 2015)...........................9, 10

*Endotach LLC v. Cook Med. Inc.*,
  No. 1:13-CV-01135-LJM, 2014 WL 852831 (S.D. Ind. Mar. 5, 2014) ....................................8

*Fatpipe, Inc. v. Talari Networks, Inc.*,
  No. 5:16-CV-54-BO, 2016 U.S. Dist. LEXIS 85366 (E.D.N.C. June 29, 2016) ....................10

*Fontem Ventures B.V. et al. v. R.J. Reynolds Vapor Co.*,
  No. 1:16-CV-01255 (M.D.N.C. Dec. 13, 2016) .......................................................................9

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*,
  No. 2:13-CV-04160-NKL, 2014 WL 2511308 (W.D. Mo. June 4, 2014) ..............................11

*InVue Sec. Prods. Inc. v. Mobile Tech. Inc.*, No. 3-15-CV-00610-MOC-DSC
  (W.D.N.C. May 20, 2016) .......................................................................................................9

*InVue Sec. Prods., Inc., v. Kum OH Elecs. Co., Ltd.*,
  No. 3:15-CV-465-MOC-DCK (W.D.N.C. April 3, 2014)..............................................4, 5, 10

*Segin Sys., Inc. v. Stewart Title Guar. Co.*,
  30 F. Supp. 3d 476 (E.D. Va. 2014) ................................................................................4, 6, 9

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
  74 F.4th 1360 (Fed. Cir. 2023) ...........................................................................................3, 12

**STATUTES, RULES & REGULATIONS**

35 U.S.C. § 102, 103................................................................................................................2

35 U.S.C. § 311(b) ...................................................................................................................2

35 U.S.C. § 313.........................................................................................................................2

35 U.S.C. § 314 (b) ...........................................................................................................................2

35 U.S.C. §§ 315-316 .......................................................................................................................2

35 U.S.C. § 316(a)(11).....................................................................................................................2

35 U.S.C. § 325(d) ..........................................................................................................................11

I.  INTRODUCTION

This Court should deny Defendants' premature motion to stay this case pending its petition for *inter partes* review ("IPR"). Plaintiff Somero Enterprises, Inc. ("Plaintiff") will be unduly prejudiced by a stay, and a stay will not simplify the issues in this litigation. This is especially true given the early stage of the IPR proceedings: Plaintiff has not even filed its preliminary response to Defendants' petition for IPR, and it will likely be another ***five months*** before the Patent Trial and Appeal Board ("PTAB") even decides whether to grant Defendant Topp & Screed's petition and institute review. Further, it is far from guaranteed that the PTAB will agree with Topp & Screed and institute an IPR. Statistics show that in the last five years, the PTAB declined to institute in at least 33%-44% of cases. Thus, if this Court enters a stay and the PTAB does not institute an IPR, this case would have been unnecessarily delayed to no end. Defendants' Motion should be denied.

II.  PROCEDURAL BACKGROUND

Plaintiff filed its Complaint for patent infringement on April 26, 2023, alleging that Defendant Topp & Screed's TS6100e product infringed U.S. Patent No. 8,038,366 ("'366 Patent"). (Document No. 1.) Defendant Topp & Screed answered the Complaint on July 26, 2023 (Document No. 22.) On August 28, 2023, Plaintiff filed its First Amended Complaint against Defendant Industrial Floor Consulting, Inc. ("IFC"). (Document No. 30.) IFC answered the Complaint on October 2, 2023. (Document No. 34.) The parties conferred and filed their Rule 26(f) report on October 20, 2023. (Document No. 37 at 3.) In the Rule 26(f) report, the parties agreed to participate in a judicial settlement conference after an initial round of preliminary discovery, which the parties agreed to complete by January 31, 2024. (*Id.* at 3.) The Court entered a Scheduling Order on October 23, 2023. (Document Nos. 37-38.)

On October 24, 2023, Defendant Topp & Screed filed an IPR petition challenging claims 1–15 of the '366 Patent. (Ex. A.) Approximately one month later, on November 22, 2023, Defendants' Motion to Stay ("Motion") followed. (Document No. 39.)

### III. BACKGROUND OF *INTER PARTES* REVIEW PROCEEDINGS

IPR proceedings were created with the adoption of the 2012 America Invents Act. An IPR allows the PTAB (which sits within the U.S. Patent and Trademark Office) to review select challenges to the validity of patent claims. However, in an IPR proceeding, the PTAB can only review validity challenges pursuant to 35 U.S.C. § 102 (anticipation) and § 103 (obviousness). (*See, e.g.*, 35 U.S.C. § 311(b).) IPR proceedings do not adjudicate infringement, damages, injunctive relief, or other invalidity issues.

The general timeline for IPR proceedings is prescribed by statute. After a petition for IPR is filed, the Board issues a notice officially setting the filing date for the petition; this triggers the three-month deadline for Plaintiff to file its (elective) Patent Owner Preliminary Response ("POPR"). (35 U.S.C. § 313.) Here, the PTAB entered a notice of filing date on November 21, 2023. (*See* Ex. B.) Plaintiff's deadline to file a preliminary response to the petition is three months from the date of the notice (February 21, 2024). (*See* Ex. B; 35 U.S.C. § 313.)

The PTAB does not make its preliminary decision whether to even institute an IPR challenge until three months after either (a) Plaintiff's POPR; or (b) if Plaintiff elects not to file a POPR, the last date on which the response could be filed. (*See* 35 U.S.C. § 314 (b).) Here, that deadline is approximately May 21, 2024. (*See id;* Ex. B.) Stated another way, the PTAB will not make a decision whether to even ***institute*** review for another five months.

If the PTAB does elect to institute review, it will not issue its final written decision for another year. (*See, e.g.*, 35 U.S.C. §§ 315-316.) This can be extended for "good cause" for up to six months. (*Id*. at § 316(a)(11).) Moreover, contrary to Defendants' suggestion, the issuance of

the final written decision is not always the end of the process. The PTAB's decision will not be binding on this Court upon issuance, but only when either the time to appeal that decision has run or the case is finally decided on appeal. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023) ("[A]n IPR decision does not have collateral estoppel effect until that decision is affirmed or the parties waive their appeal rights.") That is, any stay would unnecessarily delay these proceedings by several years if either party appeals the PTAB's decision.

Defendants' Motion relies on two wholly unsupported arguments relating to IPR timing. *First*, Defendants argue that the PTAB "will likely" issue an institution decision "sooner" than 6 months. (Document No. 39-1, p. 2.) Tellingly, there is no evidence or support offered in support of this statement. (*See id.*) In fact, recent statistics show that the PTAB takes a median of 194 days (or a little over 6 months) to make an institution decision. (*See* **Ex. 1** (showing statistics from January 2021 through present).) *Second*, Defendants argue that the PTAB's institution decision "will provide critical guidance to the parties and the Court on the scope and meaning of the asserted claims," "regardless of the result." (Document No. 39-1, p. 2.) As explained more fully below, that statement is highly speculative at this stage, where the PTAB has not even made a decision on whether it will institute.

## IV. LEGAL STANDARD

The factors that courts consider when determining whether to stay litigation are: "(1) the stage of the litigation, including whether discovery is or will be almost complete and whether the matter has been scheduled for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and, (3) whether a stay will simplify the issues in questions and streamline the trial, thereby reducing the burden of litigation on the parties and on the court." *Borgwarner, Inc. v. Honeywell Int'l, Inc.*, No. CIV. 1:07-cv-184, 2008 WL 2704818, at *1 (W.D.N.C. July 7, 2008).

3

## V. ARGUMENT

In this case, two of the three factors counsel against entering a stay at this time, while one factor is at most neutral. As such, Plaintiff respectfully requests that this Court deny Defendants' Motion to Stay.

### A. Factor 1: While This Case Is In The Relatively Early Stages of Litigation, The Court Should Still Deny Defendants' Motion (Neutral)

Although this case is in its relatively early stages, the parties have made some progress, and importantly, could make significant progress by May 2024, when the PTAB will make its institution decision. Before Defendant Topp & Screed filed its petition for IPR, the parties met and conferred and filed their Certification and Report of their 26(f) Conference and Discovery Plan. (Document No. 37.) Three days later, the Court issued a Utility Patent Claim Construction Scheduling Order. (Document No. 38.) Under the Court's schedule, the parties will make real and meaningful progress in this case prior to the PTAB's May 2024 institution decision: they will exchange initial contentions (which Plaintiff has already done); exchange claim terms and preliminary claim constructions; complete claim construction discovery; and be well into the claim construction briefing process. (*See id.*) If the PTAB does not institute IPR, all these important milestones will have been unnecessarily delayed. *See Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 485 (E.D. Va. 2014) ("If the Court were to stay this action now and the PTAB were to decline review, the overall effect would be to increase the burden on the Court's resources, as it would likely have to hold another Rule 16(b) scheduling conference and rewrite the scheduling order to account for the delay in discovery [and] *Markman* hearing briefings."). Further, this Court has independently recognized the wisdom in denying a stay prior to an institution decision. In *InVue Security Products Incorporated v. Kum OH Electronics Company, Limited*, no case management conference had been set, no discovery had taken place, and the

4

plaintiff did not even oppose the motion to stay. Def.'s Br. in Support of Mot. to Stay at 11, *InVue Sec. Prods., Inc., v. Kum OH Elecs. Co., Ltd.*, No. 3:15-CV-465-MOC-DCK (W.D.N.C. April 3, 2014) (**Ex. 2**). Yet Magistrate Judge Keesler nonetheless denied the unopposed motion to stay. No. 3:15-CV-465-MOC-DCK, D.I. 23, 25 (W.D.N.C. April 3, 2014) (**Ex. 3.**) The Court should do the same here.

Additionally, in the parties' Rule 26(f) report, they explicitly agreed to conduct an initial round of preliminary discovery by January 31, 2024, with a judicial settlement conference to follow. (Document No. 37, pp. 2-3.) Consistent with that agreement, Plaintiff served a first set of requests for production and interrogatories on both Defendants on October 27, 2023. (**Ex. 4**, Decl. of S. Waidelich, ¶ 2.) On November 20, 2023, pursuant to the Court's claim construction scheduling order, Plaintiff served its Disclosure of Asserted Claims and Infringement Contentions. (*Id*. at ¶ 3.) On November 27, 2023, Defendants served responses to Plaintiff's requests for production and interrogatories. (*Id*. at ¶ 4.) Although Defendants have, to date, failed to produce documents in response to Plaintiff's requests, Plaintiff has demanded that it do so in short order. (*Id.* at ¶ 5.)

The cases Defendants cite to for this factor are distinguishable from the facts of this case. In *Larada Sciences, Incorporated v. Flosonix Ventures, LLC*, the PTAB had **already instituted** an IPR a month prior to defendant's filing of a motion to stay. No. 318-CV-00320KDBDSC, 2020 WL 1481571, at *1 (W.D.N.C. Mar. 23, 2020). Here, by contrast, the parties are more than five months away from learning if the PTAB will institute. And, in *Audio MPEG, Incorporated v. Hewlett-Packard Computers*, the court had not set a *Markman* hearing or a scheduling conference. No. 2:15CV73, 2015 WL 5567085, at *4 (E.D. Va. Sept. 21, 2015). Here, by contrast, a scheduling

5

order has been entered and a *Markman* hearing has been set, and the parties will make real progress towards *Markman* before the PTAB even decides whether to institute.

At most, this factor is neutral, and cannot overcome the strong weight of evidence for factors 2 and 3 that supports denying the stay.

**B.  Factor 2: A Stay Would Unduly Prejudice Plaintiff (Favors Plaintiff)**

The second factor also favors denying Defendants' Motion. Beginning in 1986, Plaintiff pioneered the design, development, manufacture, and use of laser-guided concrete screeding machines. (**Ex. 5**, Affidavit of J. Cooney, ¶ 2.) Since then, Plaintiff has led the market with continued innovation, growing its product offerings from the single, original Laser Screed® to its current portfolio of 15 products. (*Id*.) Plaintiff protects its investment in innovative and proprietary designs with a portfolio of 96 patents and pending patent applications, one of which is the '366 Patent. (*Id*. at ¶¶ 3, 5.) This allows Plaintiff to have a competitive advantage in the field. (*Id*. at ¶ 4.)

Defendants and Plaintiff sell directly competing products: laser-guided concrete screeds, Document No. 30, ¶¶ 17-21, 23, and any delay will cause undue harm and prejudice to Plaintiff. *Segin Sys., Inc.*, 30 F. Supp. 3d at 483, 484-485 (where, *inter alia*, plaintiff showed that the parties were direct competitors and that a stay would cause undue prejudice, the court finding this factor "weighs strongly in favor of denying a stay"). For example, Plaintiff sells the S-485 laser screed, which it marks with the '366 Patent. (Document No. 30, ¶ 22.) Defendants sell the infringing product, TS6100e, which is a competing concrete laser screed. (**Ex. 6**.) The market for laser concrete screeds is specialized and narrow, with limited players in the market. (**Ex. 5**, ¶ 5.) These screeds are sold for hundreds of thousands of dollars. (**Ex. 7**, p. 3; *see also* **Ex. 5**, ¶ 6.) Due to this direct competition, Plaintiff stands to lose sales and customer relationships if Defendants' infringement continues. (**Ex. 5**, ¶ 11.)

6

In similar situations, courts have found that this factor favors the patent owner and supports denying the stay. For example, in *Provisur Technologies, Incorporated v. Weber, Incorporated*, the court found that the parties were "direct competitors in what the parties agree is a highly specialized and narrow marketplace." No. 20-CV-6069-SRB, 2020 WL 7346698, at *3 (W.D. Mo. Oct. 21, 2020). Because of that, the patent owner's "loss of goodwill, market share, and future revenue [was] both significant and difficult to quantify," and the patent owner had "a present and actual need for the expeditious resolution" of the lawsuit. *Id.*; *see also Cont'l Auto. Sys. Inc. v. Hamaton Auto. Tech. Co. Ltd. et al.*, No. 2:16-cv-00226, D.I. 63 (E.D. Va. Feb. 7, 2017) at pp. 7-8 (finding that this factor "weighs in favor of denying the stay" where the defendant's product was "a similar product [to plaintiff's product] that is likely being sold to similar customers") (**Ex. 8**).

The undue prejudice to Plaintiff is particularly pronounced here, where the PTAB is still months away from an institution decision. The court in *Malibu Boats, LLC v. Nautique Boat Company* addressed a similar situation and agreed. No. 3:13-CV-656-TAV-HBG, 2014 WL 3866155, at *3 (E.D. Tenn. Aug. 6, 2014). Like here, the court found that the parties "directly compete in a relatively narrow market with only a handful of competitors." *Id*. It further noted that "it may be at least six months before a decision is made as to whether the petition for review would be granted and up to eighteen months before a decision rendered, excluding the time for appeals from a PTAB decision." *Id*. The court concluded that not only does this present general concerns of "prolonged litigation," but it also "presents specific risks as to the harm plaintiff may incur while defendant's product remains on the market, should plaintiff prove successful in ultimately proving its infringement claim." *Id*.

The same is true here. Plaintiff and Defendants "directly compete in a relatively narrow market with only a handful of competitors," the PTAB is still months away from an institution

7

decision, and prolonging this litigation presents specific risks to Plaintiff from Defendants' ongoing sales. This factor favors Plaintiff.

Defendants' argument that Plaintiff will not suffer harm because the '366 Patent expires in July 2025 is a red herring. In fact, at least one court considered the effect a stay would have on a patent that is due to expire and found that an upcoming expiration favors **denying** the stay. *See e.g.*, *Endotach LLC v. Cook Med. Inc.*, No. 1:13-CV-01135-LJM, 2014 WL 852831, at *4 (S.D. Ind. Mar. 5, 2014) (denying a motion to stay where a patent would likely expire during the IPR and noting that "[s]taying the case would necessarily put [plaintiff] in an unfair position with respect to any possible settlement or royalty situation with respect to that patent.").

Further, denying the stay and ordering the parties to proceed with *Markman* could assist the parties in resolving this dispute. The *Markman* hearing is currently scheduled for June 27, 2024. (Document 38, p.1.) Even if the PTAB institutes IPR, this Court will almost certainly issue a *Markman* order well before the PTAB issues a final written decision in May 2025 (at the earliest). The *Markman* order is a significant inflection point in litigation and it will allow the parties to meaningfully assess the merits of their respective positions and potentially resolve the case before a final written decision is even issued. A stay would hinder this progress.

Finally, Plaintiff's decision not to seek injunctive relief cannot overcome the clear evidence of undue prejudice from a stay. *See Malibu Boats, LLC*, 2014 WL 3866155, at *3 (the court finding that "plaintiff is not required to bring, much less be successful on, a motion for preliminary injunctive relief to demonstrate undue prejudice" and that plaintiff's decision not to seek preliminary injunctive relief "does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in a case"); *see also Provisur Techs., Inc.*, 2020 WL 7346698, at *3 ("The Court also declines to hold [plaintiff's] litigation strategy against

8

them and is not persuaded that [plaintiff's] failure to seek preliminary injunction indicates no risk of impending harm or injury.") Thus, because Plaintiff will be unduly prejudiced, this factor weighs against granting a stay.

> C. **Factor 3: Defendants Have Not Shown That A Stay Will Simplify The Issues In Question Because It Is Highly Speculative Whether The PTAB Will Even Institute An IPR (Favors Plaintiff)**

Defendants' motion is largely premised on its assumption that the PTAB will institute review, and that it will do so for all of the challenged claims. (Document No. 39-1, p. 9.) But this is a false assumption for many reasons. First, the PTAB has not yet decided whether to institute review, and it is still many months away from doing so. Courts in this district, the Fourth Circuit, and other patent-heavy jurisdictions routinely deny motions to stay filed prior to an institution decision by the PTAB. *See, e.g.*, *InVue Sec. Prods. Inc. v. Mobile Tech. Inc.*, No. 3-15-CV-00610-MOC-DSC, D.I. 38 (W.D.N.C. May 20, 2016) (denying defendants' motion to stay pending IPR as "premature" when filed prior to an institution decision) (**Ex. 9**); *Kum OH Elecs. Co.*, *Ltd.*, CA. No. 3:15-CV-00465-MOC-DCK, D.I. 23, 25 (denying an *unopposed* motion to stay where an IPR had not been instituted yet) (Keesler, M.J.) (**Ex. 3**); *Fontem Ventures B.V. et al. v. R.J. Reynolds Vapor Co.*, No. 1:16-CV-01255, D.I. 62 (M.D.N.C. Dec. 13, 2016) (**Ex. 10**) (denying as premature motion to stay filed prior to institution decision); *DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.,* No. 15-CV-01362-BLF, 2015 WL 12859346, at *2 (N.D. Cal. Oct. 13, 2015) (denying motion to stay, and finding that "[t]he Court agrees with Plaintiff and finds that the question of whether a stay will simplify and streamline the issues in this litigation *depends entirely* on whether the PTAB decides to grant the IPR petition.") (emphasis added).

Further, the "critical question is not whether PTAB review would simplify the issues in question," as Defendants argue, "but whether a ***stay*** of this action would do so." *Segin Sys., Inc.*, 30 F. Supp. 3d at 481 (emphasis added); *see also Cont'l Auto. Sys. Inc.*, No. 2:16-cv-00226

9

(denying a motion to stay where the court found that it "cannot predict the *impact of a stay*" because it is unknown whether the PTAB will institute an IPR) (emphasis added) (**Ex. 8**). At this stage, where the PTAB is months away from deciding whether to even institute review, a *stay* of the case will not simplify the issues. Instead, the case will simply be delayed—and potentially for no reason at all. If the PTAB declines to institute an IPR, the "PTAB will offer no guidance as to the validity of the patents at issue," and this Court "would have stayed this matter for months to no helpful end." *Fatpipe, Inc. v. Talari Networks*, *Inc.*, No. 5:16-CV-54-BO, 2016 U.S. Dist. LEXIS 85366, at *4 (E.D.N.C. June 29, 2016) (denying motion to stay). This, alone, weighs "heavily against granting a stay." *Id*.

Defendants also argue that "[g]iven that [its] IPR petition presents strong anticipatory prior art for the asserted claims, it is highly likely that the PTAB will institute review and invalidate all asserted claims." (Document No. 39-1, p. 10.) However, defendants routinely make identical merits arguments in their motions to stay, and courts nonetheless consistently deny motions to stay filed prior to the PTAB's institution decision. *In Kum OH*, No. 3:15-CV-465-MOC-DCK, D.I. 23 (**Ex. 3**); *see also* Def.'s Br. in Support of Mot. to Stay at 9, *InVue Sec. Prods., Inc., v. Kum OH Elecs. Co., Ltd.*, No. 3:15-CV-00465-MOC-DCK (W.D.N.C. April 3, 2014) (**Ex. 2**); *see also DiCon Fiberoptics, Inc.*, 2015 WL 12859346, at *2 ("The Court also does not find it proper to engage in an analysis of the merits of Defendant's IPR petition" because "it would be a waste of judicial resources for this Court to attempt to anticipate" what the PTAB may do.).

Moreover, although this Court need not assess the merits of the petition for purposes of this motion, it is important to note two facts: (1) the substance of the primary reference relied on by Topp & Screed in its petition (Quenzi) was actually disclosed in the specification of the '366

10

Patent;[1] and (2) Quenzi is a **Somero** patent with nearly identical inventors to the '366 Patent.[2] (*See, e.g.*, **Ex. 11**, '366 Patent at 8:49-9:5; **Exs. 12, 13**, Topp & Screed's Ex. 1003 (Pub. No. 2003/0068200) and U.S. Patent No. 6,976,805.) Indeed, the PTAB is statutorily authorized to reject Top & Screed's petition on this fact alone. 35 U.S.C. § 325(d) ("In determining whether to institute or order a proceeding under this chapter . . . the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office.") This Court should be highly suspect of Defendants' confidence in relying on art already rejected by the PTO.

Defendants also point to a 67% institution rate to support their argument that the PTAB is "highly likely" to institute an IPR. (Document No. 39-1, p. 9-10.) But Exhibit C to the Motion also shows that, in the last five years, institution rates have fluctuated anywhere between 56% to 67%. (Ex. C, p. 7.) Further, Defendants' reliance on *Brixham Solutions* and *Intellectual Ventures II* for the argument that a "vast majority of requests for [IPRs] are accepted" is misplaced. (Document No. 39-1, p. 8; *Brixham Sol'ns. Ltd. v. Juniper Networks, Inc.*, No. 13-CV-00616-JCS, 2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) and *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-CV-04160-NKL, 2014 WL 2511308 (W.D. Mo. June 4, 2014).) Those decisions are almost ten years old, and reflect statistics for the earliest days of the America Invents Act and IPR proceedings; statistics show that at that time, 79% to 87% of IPRs were instituted, which even

---

[1] The published patent application that is formally the reference relied upon by Topp & Screed, 2003/0068200, is a publication of the application that eventually issued as U.S. Patent No. 6,976,805. (*Compare* Ex. A, pp. 17-18 (Quenzi publication) *with* U.S. Patent No. 6,976,805 (Quenzi et al.) at **Ex. 13**, p. 1.) Both the application (10/266,305) and the issued patent (6,976,805) are disclosed in the specification of the '366 Patent. (*See, e.g.*, **Ex. 11**, '366 Patent at 8:49-9:5.)

[2] The Quenzi '805 Patent was originally assigned to Delaware Capital Formation, Inc. but was subsequently assigned to Somero Enterprises, Inc. (*See, e.g.*, **Ex. 4**, ¶ 7.)

11

Defendants' statistics show are no longer the case. (*Compare Brixham Sols. Ltd.*, 2014 WL 1677991, \*1 at n. 3 and 2014 WL 2511308, \*4 at n.1 *with* Ex. C, p. 7.) Those stale statistics cannot overcome the prematurity of Defendants' motion in this case.

Finally, as Defendants concede, even if the PTAB does institute IPR in May 2024, a final written decision will not issue for another twelve months, until May 2025.[3] (Document No. 39-1, p. 3.) But, even if the IPR runs its course, the PTAB's decision will not have a preclusive effect on this litigation until either 1) the time for filing an appeal has run, or if any of the parties appeal the decision, 2) the case is finally decided on appeal. *See United Therapeutics Corp.*, 74 F.4th at 1372. Thus, this process may take several years to resolve without any preclusive effect on this litigation. Defendant relies on *Larada* to support its position regarding the preclusive effect of PTAB decisions. But unlike here, in *Larada* the PTAB had ***already*** instituted an IPR a month prior to defendant's filing of a motion to stay. 2020 WL 1481571 at \*1. Thus, in *Larada*, whatever the outcome of the IPR, the PTAB's final written decision would likely have preclusive effects on the litigation. *See* 35 U.S.C. § 315 ("The petitioner in an inter partes review of a claim in a patent under this chapter that ***results in a final written decision***…may not assert either in a civil action arising in whole or in part…that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.") (emphasis added). Here, the PTAB has not ***even*** made a decision on whether to institute an IPR. Thus, it is entirely speculative whether a ***final written decision*** will ever be entered, such that preclusion could apply.

---

[3] The PTAB can extend the date to issue a final written decision for "good cause" by 6 months. (35 U.S.C. § 316(a)(11).) Thus, this process may take longer than eighteen months.

12

## VI. CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion to Stay. Two factors counsel against a stay, while one factor is at most neutral. As such, a stay is not warranted, and the Motion should be denied.

Dated: December 13, 2023

/s/Sarah Sloan Batson
Sarah Sloan Batson
NC Bar No. 42066
Maynard Nexsen PC
104 South Main Street, Suite 900
Greenville, SC 29601
Telephone: 864-370-2211
sbatson@maynardnexsen.com

Sarah Ashley Barnett
NC Bar No. 52018
Seth L. Hudson
NC Bar No. 32259
Maynard Nexsen PC
227 West Trade Street, Suite 1550
Charlotte, NC 28202
Telephone: 704-339-0304
sbarnett@maynardnexsen.com
shudson@maynardnexsen.com

Sarah E. Waidelich
*Admitted Pro Hac Vice*
Honigman LLP
315 E. Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
734-418-4200
swaidelich@honigman.com

Leigh C. Taggart
*Admitted Pro Hac Vice*
Honigman LLP
39400 Woodward Ave., Suite 101
Bloomfield Hills, MI 48304
Telephone: 248-566-8300
ltaggart@honigman.com

*Attorneys for Plaintiff Somero Enterprises, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023, the foregoing document was electronically filed and served on all counsel of record via the Court's CM/ECF system

<u>*s/Sarah Sloan Batson*</u>
Sarah Sloan Batson
NC Bar No. 42066
Maynard Nexsen PC
104 South Main Street, Suite 900
Greenville, SC 29601
Telephone: 864-370-2211
sbatson@maynardnexsen.com

*Attorney for Plaintiff Somero Enterprises, Inc.*