# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CONTINENTAL AUTOMOTIVE
SYSTEMS INC.,

    Plaintiff,

v.

CRIMINAL ACTION NO. 2:16cv226

HAMATON AUTOMOTIVE
TECHNOLOGY CO. LTD &
JOHNDOW INDUSTRIES INC.

    Defendants.

### MEMORANDUM ORDER

Before the Court is Hamaton Automotive Technology Co. Ltd. and JohnDow Industries Inc.'s ("Defendants") Joint Motion to Stay. ECF No. 36. Defendants filed the instant Motion as the result of their pending application to the Patent Trial and Appeal Board ("PTAB") for an *Inter Partes* Review ("IPR") of U.S. Patent Numbers 8,576,060 (" '060 Patent") and 8,742,914 (" '914 Patent"). Continental Automotive Systems, Inc. ("Plaintiff") opposed Defendants' motion, ECF No. 44, and Defendants filed a response, ECF No. 52. After reviewing the Motion, and the documents filed by the parties, the Court determined that a hearing was not necessary. For the reasons stated below, Defendants' Joint Motion to Stay is **DENIED**.

### FACTUAL AND PROCEDURAL HISTORY

On November 5, 2013, the United States Patent and Trademark Office ("PTO") issued to Plaintiff the '060 Patent, which was entitled "Protocol Arrangement in A Tire Pressure Monitoring System." Compl. ¶ 9. Plaintiff designed the '060 patent as a tire pressure monitoring system ("TPMS") "configured to transmit a signal including a burst that includes a plurality of

1

frames and each of the frames includes tire pressure monitoring information such that the TPMS transmitter can communicate with various receivers with no need for programming." *Id.* at ¶ 10. On June 3, 2014, the PTO issued to Plaintiff the '914 Patent, which was entitled "Tire Pressure Monitoring Apparatus and Method." *Id.* at ¶ 11. Plaintiff designed the '914 Patent as a "a TPMS transmitter that, by execution of a control program, transmits tire pressure information according to each of a plurality of communications formats which are incorporated into the control program." *Id.* at ¶ 12. Together, these patents are incorporated into Plaintiff's REDI-Sensor, which is advertised as being "ready right out of the box." *Id.* at ¶ 1.

On May 6, 2016, Plaintiff filed a two count complaint against Defendants. Count One alleges Defendants infringed on at least claim 1 of Plaintiff's '060 Patent. *Id.* at ¶ 29. Count Two alleges Defendants infringed on at least claim 9 of Plaintiff's '914 Patent. *Id.* at ¶ 42.

Plaintiff alleges that it sent letters to Defendants, and 31 Inc.—another seller of Multiprotocol sensors—on November 4, 2015, specifically charging them with infringement of the '060 Patent and '914 Patent. *Id.* at ¶ 26. In response, 31 Inc. agreed to immediately stop selling any of the accused Multiprotocol Sensors. *Id.* at ¶ 27. But Defendants refused to cease their infringing activities. *Id.*

On December 19, 2016, more than seven months after Plaintiff filed its Complaint, Defendants filed IPR petitions for the '060 Patent and the '914 Patent. ECF No. 37-1. On December 29, 2016, Defendants filed a Motion to Stay Pending Inter Partes Review of the Patents-in-Suit. ECF No. 36. On January 11, 2017, the Parties filed a Joint Motion to Enter an Order on Claim Construction. ECF No. 39. On January 12, 2017, Plaintiff responded to Defendants' Motion to Stay. ECF No. 44. On January 18, 2017, Defendants replied to

Plaintiff's response to the Motion to Stay. ECF No. 54. On January 20, 2017, the Court granted the parties' Joint Motion to Enter an Order on Claim Construction. ECF No. 54.

## LEGAL STANDARD

On September 16, 2012, the United States Patent and Trademark Office revised its "rules of practice to implement the provisions of the Leahy–Smith America Invents Act ("AIA")," which created new *Inter Partes* Review ("IPR") proceedings before the PTAB. 77 F. Reg. 48680–01 (Aug. 14, 2012). Under the AIA, a party may seek a stay of a pending civil action after filing a petition for IPR. AIA § 18(b). The District Court has discretion in deciding whether to stay the action, but it must base its decision on the following four factors:

1. whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

2. whether discovery is complete and whether a trial date has been set;

3. whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

4. whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.* § 18(b)(1). Congress provided that a "party may take an immediate interlocutory appeal from a district court's decision" to grant or deny a stay, and that the "United States District Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo." *Id.* § 18(b)(2). The Federal Circuit has made clear, however, that it is "not error for the district court to wait until the PTAB" makes its decision to institute review before ruling on a motion to stay. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315 (Fed.Cir.2014).

According to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), some district courts have waited to rule on a motion to stay until the PTAB determined whether it would institute IPR review, while others have denied defendant's motion, without prejudice, because the motion was premature and because the defendant could refile its motion to stay in the event that PTAB agreed to review its petition. See *Id.* at 1315–16. While the Federal Circuit expressed no opinion on which practice is better, it noted, "no doubt the case for a stay is stronger after post-grant review has been instituted." *Id.* at 1316. Alternatively, the Federal Circuit made it clear that "a district court is not obligated to 'freeze' its proceedings between the date that the motion to stay is filed and the date that the PTAB decides on the" petition. *Id.*

## DISCUSSION

### a. Simplification of Issues

The first factor the Court must consider is whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial. AIA § 18(b)(1)(A). In response to this factor, Defendants assert that their IPR petition challenges the validity of 10 claims in Plaintiff's patents—eight of which are independent claims. ECF No. 37. If PTAB agrees to review Defendants' petition, a decision it will reach no later than four months from now, *see* ECF No. 51, a stay pending that review could potentially reduce the number of disputed issues, regardless of whether the review ultimately concludes that the patent is valid. Accordingly, if PTAB deems a claim invalid, that claim would not be re-litigated in Plaintiff's patent infringement claims. *See Segin Sys., Inc. v. Stewart Title Guar. Co.,* 30 F. Supp. 476, 481 (E.D. Va. Mar. 31, 2014). Additionally, any claims that PTAB finds valid would also be resolved for the purposes of this action, because Defendants would be precluded from challenging the validity of such claims after PTAB review. AIA § 18(a)(1)(D); *see also Segin*, 30 F. Supp. at 481.

4

The critical question, however, is not whether PTAB review would simplify the issues in question, but whether a stay of this action would result in simplification of the matter. *Segin*, 30 F. Supp. at 481. At this stage, the Court cannot predict the impact of a stay because it is unknown whether PTAB will institute post grant review. *Id.* Similarly, it is unclear whether PTAB will conclude that "it is more likely than not that at least one of the claims challenged in the petition is unpatentable"—a finding PTAB must make before deciding to grant review. *See* 37 C.F.R. § 42.208(c).

Even if PTAB finds every claim of the patent invalid, some invalidity issues will remain—namely the claims that were not included in the PTAB application. Plaintiff notes that notwithstanding the noted claims in Defendants' IPR petition, there are seven unchallenged claims—specifically claims 2 and 5 of the '060 Patent, and 10-14 of the '914 Patent. ECF No. 44. In response, Defendants note that they did not target the seven unchallenged claims because "Plaintiff had not asserted those dependent claims at that time, nor had it hinted that they would be added." Alternatively, Defendants note that in "anticipation" of Plaintiff raising additional claims after Defendants filed their IPR petition, Defendants elected, on their own volition, to add independent claims 6, 11, 13, 15, and 17 of the '060 Patent, and independent claims 9, 6, and 17 of the '914 Patent. ECF No. 51.

If Defendants in fact anticipated that Plaintiffs intended to use this tactic, it is curious that they did not include the seven unchallenged claims—especially considering that the Complaint alleged that Defendants infringed on "at least" Claim 1 of the '060 Patent and "at least" Claim 9 of the '914 Patent. *See* ECF No. 1 ¶¶ 29 and 42. Nevertheless, it is unclear to the Court whether an IPR Review will simplify the parties' issues. As a result, the Court finds that this factor is neutral.

5

### b. Completion of Discovery and a Trial Date

The second factor is "whether discovery is complete and whether a trial date has been set." AIA § 18(b)(1)(B). Courts generally favor staying a case in its earlier stages because it tends to maximize the efficient use of judicial resources and "prevents duplicative or wasted effort issues that are ultimately resolved by PTAB review." *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 476, 482 (E.D. Va. Mar. 31, 2014) (citation omitted).

The trial date in this case has been set, pursuant to the Rule 16(b) Scheduling Order, for June 20, 2017. ECF No. 26. Likewise, Discovery is scheduled to be completed by April 11, 2017 (with the exception of discovery pertaining to expert witnesses), which is a little more than two months from now. *Id.* As of October 2016, Defendants completed their document production and responses to interrogatories. ECF No. 44. Additionally, the Court granted the parties' Joint Motion to Enter an Order on Claim Construction, which completed the Claim Construction process and the *Markman Hearing* scheduled for February 27, 2017 was cancelled. ECF No. 54.

With discovery concluding in a little more than two months from now, the claim construction process being complete, and trial being a little less than six months away, this case has developed well beyond the early stages. For this reason, the Court finds that the second factor weighs against staying this case.

### c. Undue Prejudice

The third factor for consideration is "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." AIA § 18(b)(1)(C).

To determine if a stay would create undue prejudice, courts consider a variety of non-dispositive factors. For example, courts consider (1) whether the parties are direct competitors,

6

*VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014) (citation omitted); *Segin*, 30 F. Supp. at 482 (citation omitted); (2) whether the non-moving party needs "an expeditious resolution of its claim", *VirtualAgility*, 759 F.3d at 1318; and (3) whether the non-moving filed for injunctive relief. *See Id.* at 1319; *see also E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sol. LLC*, No. 10-3409, at * 4 2012 WL 2995182 (D.N.J. July 23, 2012) (stating, "[w]hile the Court appreciates DuPont's concern that MacDermid will continue to sell its allegedly infringing product during the course of the stay, thereby further eroding DuPont's market share and resulting in substantial loss of profits and goodwill, the Court notes that DuPont did not seek a preliminary injunction in this matter." Each of the aforementioned factors are discussed, in turn, below.

### *1. Direct Competition*

Plaintiff argues that Defendant is its "direct and only competitor." ECF No. 44. Plaintiff further argues that Defendants' continued presence in the market will cost Plaintiff $31 million between now and 2020. *Id.* In response, Defendants assert that Plaintiff's $31 million loss projection is unsubstantiated, and further notes that it is not Plaintiff's only competitor. ECF No. 51. Defendants argue that there are three types of TPMS transmitters, and out of the three types of TPMS transmitters, Defendants represent a "mere 10%" of the market.

Courts have found that parties are direct competitors if they sell similar products to similar customers or are in similar markets. *Segin*, 30 F. Supp. at 483 (citation omitted). Although Defendants attempt to downplay their competition with Plaintiff's product, by noting that there are three other like products on the market, Defendant's argument is unpersuasive.

Plaintiff did not file its Complaint because it believes Defendants' TPMS transmitter is one of its direct competitors. Plaintiff filed its Complaint because it believes it created "the first

universal tire pressure monitoring system ("TPMS") transmitter" and that Defendants have infringed on this specific creation. *See generally* ECF No. 1. While Defendant does not explicitly dispute that its product directly competes with Plaintiff's product, it states that "the Dynamic DVT was fully developed, tested and market ready before [Plaintiff's] patents were filed and the REDI-Sensor was offered." ECF No. 51. Whether Defendants' product was created before or after Plaintiff's product does not negate the fact that it is a similar product that is likely being sold to similar customers—or stated more strongly, that Defendants' product is in direct competition with Plaintiff's TPMS transmitter. Without more, the Court finds that the parties' products are in direct competition, and this factor weighs in favor of denying the stay.

### 2. *Need for an Expeditious Resolution*

In determining whether the non-moving party needs "an expeditious resolution of its claim," courts also consider whether a stay will diminish a patentee's monetary damages. *Id.* As noted above, Plaintiff argues that it stands to lose $31 million by 2020 if Defendant remains in the market. But as the Court discusses in greater detail in the Tactical Advantage section, both parties were delayed in filing their initial documents. Although Plaintiff provides some explanation for its delay, the Court is not persuaded that if it granted the stay that Plaintiff would experience an unusual degree of harm—certainly not any more than it has already experienced. This finding is further confirmed by Plaintiff who stated, "even if DVT Sensors are removed from the market, the damage will linger in the form of reduced prices for the REDI-Sensor..." ECF No. 44. For this reason, the Court finds that Plaintiff has not expressed a clear need for an expeditious resolution of this matter.

### 3. *Injunctive Relief*

8

Defendant notes that granting a stay will not cause Plaintiff undue prejudice because Plaintiff has not filed a preliminary injunction. ECF No. 37. While Plaintiff does not dispute this point, Plaintiff argues that it did not need to move for an injunction because trial was set a year after it filed its Complaint, and "no motion for preliminary injunction could have significantly accelerated Defendants' departure from the market." As the court noted in *VirtualAgility*, "there could be a variety of reasons that a patentee does not move for a preliminary injunction." 759 F. 3d at 1319. Accordingly, in light of how rapidly the case is moving, the Court finds that Plaintiff's reasoning is sound, and that a motion for injunctive relief was not necessary.

### 4. *Tactical Advantage*

Plaintiff argues that granting a stay, at this juncture, is purely tactical because Defendants waited more than a year after being notified of their infringement, and seven months after being served with the Complaint, to file their IPR petition. Defendants assert that submitting their IPR petition on December 29, 2016, was not tactical. Defendants note that an IPR petition requires a presentation of all evidence upon filing, unlike civil litigation, and typically cost more than $350,000 in legal fees per petition. Defendants further note that "the parties have not completed depositions, exchanged expert reports, or spent time and resources on anything other than written discovery."

It is important to note that Plaintiffs were also delayed in filing their documents with the Court. Specifically, Plaintiff learned of Defendants' allegedly infringing product in December of 2013, but filed its Complaint against Defendants in May of 2016. Although Plaintiff argues that the delay was due, in large part, to conducting independent research, Plaintiff's argument is not much different than Defendants' argument that it needed time to gather evidence for its IPR

9

petition. Given both parties were delayed in filing their preliminary documents, the Court finds that this element is neutral.

In light of the Court concluding that the parties are direct competitors, the Court finds that the third factor weighs slightly in favor of denying a stay.

### d. Burden of Litigation

The final factor the Court must consider is "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D). Much of the analysis conducted under the first factor is relevant here, as the streamlining of issues will generally serve to reduce the burden of litigation on the parties and on the Court. *Segin*, 30 F. Supp. at 485. The Court incorporates that analysis by reference here. Beyond that, however, is the additional consideration of the impact that will occur if the Court stayed this action and PTAB declined to review Defendants' petition. "[T]he overall effect would be to increase the burden on the Court's resources, as [the Court] would likely have to hold another Rule 16(b) scheduling conference and rewrite the scheduling order to account for the delay in discovery, *Markman* hearing briefings." *Id.* The trial date would also be substantially delayed.

For these reasons, the Court finds that the fourth factor is neutral.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Stay is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February 7, 2017

/s/
Raymond A. Jackson
United States District Judge